UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTONIO D. HUFF,

    Plaintiff,

v.                                                    Case No. 2:05-cv-92
                                                 HON. ROBERT HOLMES BELL

LYLE RUTTER, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Antonio D. Huff, an inmate currently confined at the Alger Maximum Correctional Facility in Munising, Michigan, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Inspector Lyle Rutter, Inspector Greg Schultz, Case Manager L. Phillipson, Case Manager Peggy Ann Carberry, and Mail Room Supervisor Sherri Andrews, all of whom are employed at the Alger Maximum Correctional Facility (LMF).

In his complaint filed on April 20, 2005, Plaintiff, who has been designated a member of a Security Threat Group (STG) known as the "Five Percenters," challenged the confiscation of prohibited STG-related mail and the issuance of a major misconduct charge as violative of his First and Fourteenth Amendment rights. Plaintiff had been designated as a member of an STG known as the Gangster Disciples and purported to renounce his affiliation with the STG in late 2001. However, Plaintiff told LMF Inspector and STG Coordinator Defendant Rutter that he had embraced a "religious group" known as the Five Percenters. The Five Percenters is a purported "religious

organization" that has been designated by federal and various state prison officials, including MDOC officials, as an STG.  Defendant Rutter advised Plaintiff of such and told him he should cease all correspondence with the Five Percenters as well as the Gangster Disciples.  After purporting to renounce his affiliation with both STG's, the LMF mailroom received correspondence sent to Plaintiff from a Texas death row Five Percenter inmate. Defendant Rutter confiscated the letter while screening incoming prisoner mail, found that the letter contained sentence structure and phraseology consistent with the Five Percenters, and issued a Notice of Intent to Conduct an Administrative Hearing (NOI).  Following an administrative hearing, LMF Case Manager Defendant Phillipson upheld the NOI and ordered the item destroyed.

Afterwards, Plaintiff authored a return letter to the Texas Five Percenter inmate, and on February 13, 2002, Defendant Rutter confiscated the letter.  Because the contents and style of the letter were consistent with that of the Fiver Percenters, Defendant Rutter charged Plaintiff with disobeying the order that he cease STG-related communications.  Plaintiff filed a grievance the next day claiming Defendant Rutter had tricked him into renouncing his affiliation with the Five Percenters.  Following a hearing, the disciplinary charge was dismissed based on the hearing officer's finding that the MDOC had not proven that Defendant Rutter's directive was an order instead of "instructional" information and that Plaintiff understood the order.  Subsequently, Plaintiff filed another grievance against Defendant Rutter.  (Def. Ex. 1; Plaintiff's Exs. F and G, I and J). Both Defendant Rutter and LMF Mailroom Clerk Defendant Andrews then issued additional NOIs on Plaintiff's incoming mail after determining the mail contained prohibited STG-related material.  Following administrative hearings, Defendant Carberry upheld each of the NOIs.  Plaintiff filed more

grievances against Defendant Rutter, as well as grievances against Defendants Andrews and Carberry.  (Def. Ex. 1; Plaintiff's Exs. N, O, R, U, XXX, BBB, FFF, QQ, YY, CCC, KKK, NNN).

During this time, Plaintiff requested removal of his STG designation and Defendant Rutter instructed Huff to prepare a report containing an autobiography of his involvement with both the Gangster Disciples and the Five Percenters.  Plaintiff declined to provide the requested information and Defendants note that he was advised that any information he might wish to add in the future would be considered at that time.

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is genuine issue of material fact for trial.  *Id*. at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff's response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing

*Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants claim that they are entitled to summary judgment on Plaintiff's claims that the confiscation of STG-related mail and the issuance of a major misconduct charge violated his First and Fourteenth Amendment rights.  Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972).  Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See, for example, Wisconsin v. Yoder*, 406 U.S. 205 (1972).  However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See, for example, Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote).  *See, generally, Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25.  In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to

4

assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id*. at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id*. at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id*. at 90. "Prison officials need not show that no reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Plaintiff asserts First Amendment religion and censorship claims stemming from the confiscation and destruction of the STG-related mail. Plaintiff claims that his mail was improperly rejected in violation of his First Amendment rights. Although there is no question that the First Amendment applies to a prisoner's receipt of incoming mail, the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993). The Supreme court

5

held that "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 342 (1987). In *Lavado v. Kehohane*, the Court held that "prison" officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." 992 F.2d 601, 607 (1993). Moreover, with regard to outgoing mail the Supreme Court explained in *Procunier v. Martinez*, that a challenged practice of censoring prisoners' outgoing mail is constitutional if it promotes "one or more substantial governmental interests of security, order, and rehabilitation," and is "no greater than necessary. . . to the protection of the particular governmental interest involved." 416 U.S. 396, 413 (1974).

        In support of their motion for summary judgment, Defendants note the designation of Plaintiff as a member of an STG group. They argue that an STG by definition, poses a threat to the safety of staff, other prisoners, and the safety and order of the facility and, therefore, a prohibition on mail containing STG-related material is reasonably related to the legitimate penological goal of maintaining order and security. MDOC Policy Directive 04.04.113(A). The purpose of identifying a prisoner as an STG member is to proactively manage the emerging problem of STGs and to assist in the prevention of violence. MDOC Policy Directive 04.04.113(B) and (C). In his response, Plaintiff asserts that the MDOC mail policy does not list or refer to mail related to all STG's as a "security threat" based on the STG designation alone. He also argues that the MDOC mail policy does not list mail containing STG-related materials as impermissible contraband at all MDOC facilities. With regard to the outgoing mail, Plaintiff asserts that sealed outgoing mail may be opened by prison staff only if it can be determined prior to the opening of said mail that "reasonable grounds" exist to believe said mail is being sent in violation of policy. (Ex. A at paragraph 5).

However, Defendants assert that the accommodation of STGs is neither practical nor reasonable and that Plaintiff can make no showing that his communications were limited in any other manner. In addition, Defendants point out that the MDOC policy governing contraband mail is neutral and evenhanded as required by *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) since it applies to all inmates and all STG-related material. *Id.* at 607. *(See* Policy Directive 05.03.118 (EE) (eff. date 01/01/01), which is attached to Defendant's brief in support of the motion for summary judgment as Exhibit 3.[1]) Thus, it is clear that there is a valid, rational connection between Plaintiff's designation as an STG member and institutional safety, and that such a designation is reasonable. *Turner*, 482 U.S. at 90. As noted above, any First Amendment rights retained by prisoners upon incarceration must yield to "the legitimate penological objectives of the corrections system," such as order, security, or rehabilitation. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Therefore, in the opinion of the undersigned, Defendants have met their burden with regard to Plaintiff's First Amendment religion and censorship claims. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to those claims.

In addition, Plaintiff claims that both his procedural and substantive Fourteenth Amendment due process rights were violated by the challenged mail rejections. With regard to the procedural due process rights, Defendants explain that the Fourteenth Amendment's guarantees of procedural safeguards apply only to recognized liberty or property interests. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Because Plaintiff is a prison inmate, he does not have a protected liberty or property interest in sending or receiving STG-related mail. Therefore, Defendants argue that there

---

[1] MDOC Policy provides that prisoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, that may facilitate or encourage criminal activity, or that may interfere with the rehabilitation of the prisoner. Policy Directive 05.03.118 (EE).

is no federal entitlement to the Fourteenth Amendment's procedural due process safeguards with respect to administrative hearings held by Defendants Carberry and Phillipson.

Moreover, even assuming the existence of a protected property interest, a plaintiff alleging infringement of property rights must show that the deprivation was caused by action taken pursuant to established state procedures. *Hudson v. Palmer*, 468 U.S. 517, 532 (1984). Defendants note that a Fourteenth Amendment procedural due process claim will not lie where the plaintiff avers a random and authorized act and fails to demonstrate the adequacy of State post-deprivation remedies. *Parratt v. Taylor*, 451 U.S. 527 (1981). Plaintiff's procedural due process claims are based on allegations that Defendants Phillipson and Carberry failed to follow established state procedure by failing to hold a hearing within the applicable time limit, by failing to include his written statements, and by improperly disposing of the rejected mail items. (*See, e.g.*, Dkt. No. 1, Complaint at ¶¶ 17, 18, 20, 48, 59, 62, 106, 110, 117). Plaintiff avers random and unauthorized acts, but has made no showing of the inadequacy of State post-deprivation remedies such as the submission of claims for reimbursement through the Prisoner Benefit Fund or the State Administrative Board.

In addition, the undersigned notes that the record in this case establishes that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v.*

8

*California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Plaintiff concedes that he received hearings regarding his objections to the withholding of his mail. The fact that Plaintiff disagrees with the decision reached following the hearings is not sufficient to show a due process violation.

Finally, the undersigned notes that Defendants' issuance of NOIs and the actual designation of Plaintiff as an STG member do not subject Plaintiff to an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Without a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated because, "process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, *2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, *1 (6th Cir. March 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have

9

a constitutional right to a particular security level or place of confinement). Plaintiff's designation as a "Security Threat Group Member" is nothing more than a security classification used by the prison. Therefore, for the reasons set forth above, Defendants are entitled to summary judgment on Plaintiff's due process claims.

Defendants also argue that the substantive due process claims against Defendants Phillipson and Carberry, as well as the substantive due process claims against Defendants Rutter and Andrews for issuing the NOIs, are deficient as a matter of law. In the opinion of the undersigned, the Substantive Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205(1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff's allegations in this case fail to meet this formidable standard and thus, Defendants are entitled to summary judgment on Plaintiff's substantive due process claims.

Plaintiff also asserts that Defendants violated his right to be free from retaliation under the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, the

plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants argue that there is no showing of "adverse action" motivated by "protected conduct" for the purposes of a First Amendment retaliation claim. Defendants assert that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct'" and cannot proceed beyond the first step of the retaliation analysis. *Thaddeus-X*, 175 F.3d at 395. Defendant Rutter cited Plaintiff for disobeying a November 2001 order to cease STG-related communications. Plaintiff does not dispute his knowledge that the Five Percenters is an STG, that he was directed to cease communications related to the STG, or that he authored a letter containing Five Percenter materials. (See, *e.g.* Plaintiff's Ex. I - March 7, 2002 Administrative Hearing Report). Since Plaintiff's possession of STG-related material violated the prohibition on the possession of contraband mail items, contained in MDOC policy directive 05.03.118, he was in violation of a legitimate prison regulation. (See Def. Ex. 3). Defendants argue that because of these circumstances, Plaintiff was not engaged in protected conduct when he authored and tried to mail the STG-related letter, and a First Amendment retaliation analysis ends at step one in the retaliation claim analysis. *Thaddeus-X*, 175 F.3d at 395. With regard to Plaintiff's assertion of grievance filings as "protected conduct," Defendants argue that there is no indication that Defendant Rutter was affected by or even had knowledge of Plaintiff's grievance filing against Defendant Phillipson when Defendant Rutter wrote the major misconduct report.

Moreover, Defendants assert that if they can show that they would have taken the same action regardless of Plaintiff's exercise of his First Amendment rights, they are entitled to summary judgment. *Mount Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274 (1977). Defendants explain that Defendant Rutter charged Plaintiff with disobeying a direct order based on Plaintiff's authorship and attempt to mail a letter containing prohibited STG-related material after being told to cease STG-related communications, and assert that Defendant Rutter would have done so regardless of whether Plaintiff filed grievances. (Def. Ex. 1; Plaintiff's Ex. F).

In the opinion of the undersigned, Defendants have met their burden with regard to the retaliation claim. With regard to retaliation claims, conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996). It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Plaintiff must allege a "chronology of events from which retaliatory animus on the part of Defendants" could reasonably be inferred. Id. At 108-109; *see also El-Amin v. Tirey*, 817 F. Supp. 694-699 (W.D. Tenn. 1993) ("A claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred" and "an inmate claiming retaliation must show more than a subsequent disciplinary charge") (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (1988)). While a Major Misconduct report would likely deter a person of ordinary firmness from filing grievances, Plaintiff does not dispute his violation of the November 2001 order to cease STG-related communications. Therefore, Plaintiff was not engaged in protected conduct when he authored and tried to mail the STG-related letter. Accordingly, the undersigned

recommends that Defendants' motion for summary judgment be granted as to Plaintiff's retaliation claim.

Plaintiff claims that Defendant Schultz subjected him to "ethnic intimidation" by threatening him in the course of an STG interview. Plaintiff claims that Defendant Schultz told him that Plaintiff was going to be sent to maximum security as an STG II inmate. As noted by Defendants, such conduct does not constitute ethnic intimidation. The designation of a prisoner as an STG member is not an "ethnicity." Moreover, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)(verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at * 3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at * 2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, the undersigned

recommends that Defendants are entitled to summary judgment with regard to Plaintiff's "ethnic intimidation" claim.

Furthermore, Defendants assert that they are entitled to qualified immunity, which shields them from civil damages in their individual capacities. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in

question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id*.

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id*.

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990) (a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

As noted above, Defendants are entitled to summary judgment on the merits of Plaintiff's claims. Therefore, in the opinion of the undersigned, Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has not sustained his burden of proof in response to Defendants' motion for summary judgment with regard to his First and Fourteenth Amendment claims. In addition, the undersigned concludes that Plaintiff's claims are barred by the doctrine of qualified immunity. Accordingly, it is recommended that Defendants'

Motion for Summary Judgment (Docket #25) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal those issues or claims addressed or resolved as a result of the Report and Recommendation.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 20, 2006